CIKLIN, J.
Arrowood Indemnity Company (“Arro-wood”) appeals the trial court’s order dismissing its legal malpractice case against Conroy, Simberg, Ganon, Krevans, Abel, Lurvey, Morrow & Schefer, P.A., Joseph L. Zollner, and John E. Herndon, Jr. (collectively “Conroy Simberg”). Arrowood asserts the trial court erred when it determined that the statute of limitations began to accrue when Arrowood and other parties executed an agreement to settle underlying litigation. During the underlying litigation, Arrowood alleges, Conroy Sim-berg committed malpractice in the course of representing the interests of Arrowood. On appeal, Arrowood argues the statute of limitations began to accrue not at the time the parties settled the litigation but when the trial court’s actual order dismissing the underlying litigation (based on the settlement agreement) became final. Because the underlying litigation had not reached its outermost boundary of finality when the parties entered the settlement agreement, we agree with Arrowood that the statute of limitations had not expired in this case.
Facts
This matter arose from a dispute and ensuing litigation relating to a construction project. Estoril, Inc. (“Estoril”) was the builder of a condominium construction project. Estoril created and maintained its own “owner-controlled” insurance program with a designated insurance company and excess coverage policies with additional insurers, including Arrowood.[1] In 2005, Es-toril sued the general manager, subcontractors, and other parties involved in the project alleging construction defects. Several insurers, including Arrowood, became involved in the litigation.
On December 6, 2005, Arrowood retained Conroy Simberg as coverage counsel and sought professional advice relating to the insurance program and the excess coverage policies, plus other legal services relating to the litigation commenced by Estoril. Conroy Simberg represented Ar-rowood until October 2007, when Arro-wood terminated Conroy Simberg and retained new counsel.
In December 2008, Estoril, the other parties to the litigation, and the insurers, including Arrowood, reached a settlement (“the Settlement”). The Settlement provided that Arrowood would pay Estoril $4.8 million, and the other insurers and parties would collectively pay Estoril $5.2 *1081 million. The Settlement required the parties and insurers, including Arrowood, to wire their respective payments to a law firm serving as an escrow agent on or before December 22, 2008. In exchange for the Settlement, the parties agreed to a dismissal of the litigation with prejudice.
Between December 15 and 18, 2008, Es-toril, Arrowood, and the other parties and insurers executed documents which memorialized the Settlement. Arrowood’s representative signed the Settlement papers on December 16. In accordance with the Settlement, Arrowood wired its portion of the Settlement payment to the escrow agent on December 22, 2008. A stipulation for dismissal with prejudice was filed with the trial court, together with a proposed order of dismissal. On January 12, 2009, the trial court formally entered its order of dismissal with prejudice. No party appealed the order of dismissal.
On December 22, 2010, Arrowood filed a legal malpractice action against Conroy Simberg in federal court.[2]
On February 29, 2012, Arrowood filed its legal malpractice suit against Conroy Simberg in Florida circuit court. Arro-wood alleged that Conroy Simberg breached its duties of care in various ways during the litigation. Arrowood further alleged that if Conroy Simberg had not been negligent in its representation of Arrowood, Arrowood would have settled the litigation for “at least $1,000,000. less” than the Settlement amount, and would have saved over $1,000,000 in legal fees.
Conroy Simberg moved to dismiss the case on the grounds that the statute of limitations for an attorney malpractice claim had elapsed before the date the malpractice suit was filed. In support of its position, Conroy Simberg primarily relied on this court’s decision in Glucksman v. Persol North America, Inc., 813 So.2d 122 (Fla. 4th DCA 2002). Arrowood filed a response in opposition to Conroy Sun-berg’s motion to dismiss and the case proceeded to a hearing on Conroy Simberg’s motion’ After hearing argument, the court concluded “it appears that Glucks-man controls, and this case is past the statute of limitations. So the motion is granted.” The court issued a written order of dismissal and subsequently denied Arrowood’s motion for rehearing.
Analysis
“We review orders of dismissal de novo.” Horton v. Freeman, 917 So.2d 1064, 1066 (Fla. 4th DCA 2006) (citation omitted). “In ruling on a motion to dismiss, the trial court must confine itself to the four corners of the complaint, accept the allegations of the complaint as true, and construe the allegations in the light most favorable to the plaintiff.” Brooke v. Shumaker, Loop & Kendrick, LLP, 828 So.2d 1078, 1080 (Fla. 2d DCA 2002) (citation omitted).
Because of the tolling agreement executed by the parties in this case, the issue squarely before us is whether the statute of limitations for Arrowood’s legal malpractice claim expired before December 22, 2010, the date it filed suit against its former attorneys. Generally, “[a] cause of action accrues when the last element constituting the cause of action occurs.” § 95.031(1), Fla. Stat. (2008). “ ‘A legal malpractice action has three elements: 1) the attorney’s employment; 2) the attorney’s neglect of a reasonable duty; and 3) the attorney’s negligence as the proximate cause of loss to the client.’ ” Larson & Larson, P.A. v. TSE Indus., Inc., 22 So.3d 36, 39 (Fla.2009) (quoting Law Office of *1082 David J. Stern, P.A. v. Sec. Nat’l Servicing Corp., 969 So.2d 962, 966 (Fla.2007)).
Florida law sets a two-year statute of limitations for professional malpractice: “Within two years ... An action for professional malpractice, other than medical malpractice, whether founded on contract or tort; provided that the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence.” § 95.11(4)(a), Fla. Stat. (2008).
Recognizing that the law was unclear as to when the limitations period for legal malpractice in a litigation-related context began to run, the Florida Supreme Court established a bright-line rule in Silvestrone v. Edell: “We therefore hold, in those cases that proceed to final judgment, the two-year statute of limitations for litigation-related malpractice under section 95.11(4)(a) ... begins to run when final judgment becomes final.” 721 So.2d 1173, 1175-76 (Fla.1998). The Court reasoned that “[s]ince redressable harm is not established until final judgment is rendered, a malpractice claim is hypothetical and damages are speculative until the underlying action is concluded with an adverse outcome to the client.” Id. at 1175 (citations omitted). The Court also provided guidance for determining when a final judgment becomes final: “[A] judgment becomes final either upon the expiration of the time for filing an appeal or post-judgment motions, or, if an appeal is taken, upon the appeal being affirmed and either the expiration of the time for filing motions for rehearing or a denial of the motions for rehearing.” Id. at 1175 n. 2. Finally, the Court rejected a case by case factual analysis of when a plaintiff knew it had suffered “redressable harm” in litigation malpractice cases, and the Court instead opted for “certainty.” Id. at 1175-76.
Where, however, the underlying dispute is not litigated, the cause of action for legal malpractice. accrues “when the client’s right to sue in the related or underlying proceeding expires.” Glucksman, 813 So.2d at 124 (citing Blumberg v. USAA Cas. Ins. Co., 790 So.2d 1061, 1065 (Fla.2001)). Although riddled with complex facts, the holding of Glucksman was straightforward. This court concluded that when no underlying judicial proceedings exist and the dispute ends in a settlement agreement, the limitations period begins to run when the parties execute the settlement agreement. Id. at 126. However, when a malpractice action is predicated on errors or omissions committed in the course of litigation, the cause of action accrues “when the client incurs damages at the conclusion of the related or underlying judicial proceeding.” Id. at 124 (citation omitted and emphasis added).
Consistent with the bright-line rule firmly set forth in Silvestrone, we find that the statute of limitations period began to run when the trial court’s order dismissing the underlying Estoril litigation became final.[3] Although Arrowood arguably knew the nature of the harm caused to it by the alleged negligence of Conroy Simberg when it entered the Settlement, the full extent of Arrowood’s damages could not be considered established and the underlying litigation could not be considered concluded until the trial court dismissed the litigation. See Zakak v. Broida & Napier, P.A., 545 So.2d 380, 381 (Fla. 2d DCA 1989). As Arrowood correctly points out, had a party not complied with the terms of the Settlement, the intervention of the trial court may have been needed. In other words, *1083 Arrowood did not know for certain that the Settlement of the underlying litigation was final until the trial court dismissed the litigation and no party timely appealed the dismissal.
We must acknowledge that some confusion has arisen as a result of the Florida Supreme Court’s opinion in Larson & Larson, P.A. v. TSE Industries, Inc. In Larson, a federal court entered a final judgment in favor of Franklynn Industries, Inc. against TSE Industries, Inc. Larson, 22 So.3d at 38. Franklynn then followed up on the final judgment by filing a subsequent motion for sanctions against TSE. The federal court granted the sanctions motion but withheld determination of the sanctions award. While the motion for sanctions was pending, the parties settled the sanctions issue and agreed to a sanctions award amount which was filed with the court in the form of a stipulation of dismissal.[4]
In Larson, the Supreme Court confronted the issue of statute of limitations accrual as to (1) the final judgment and (2) the subsequent sanctions amount. Id. at 41. The Court applied the ordinary Silvestrone rule to the final judgment, stating that “[ujnder the Silvestrone bright-line rule, redressable harm was established when the final judgment against TSE in the patent infringement action became final.” Id. at 43. However, for the sanctions claim which was ultimately settled and dismissed, Justice Canady, with two justices concurring in the opinion and three justices concurring only in the result,[5] decided:
Here, the point of finality with respect to the sanctions claim was not reached until the settlement was entered while the sanctions litigation was pending. Until then, it was possible that an appeal in the sanctions litigation would produce an outcome favorable to TSE. Only with the entry of the settlement agreement was the existence of any harm to TSE arising from the sanctions claim determined with sufficient certainty to justify commencement of the limitations period.
Id. at 47-48.
In the case at bar, the cause of action against Conroy Simberg accrued when the trial court’s order dismissing the underlying litigation became “final.”[6]
*1084 In light of our holding, we decline to address Arrowood’s other arguments on appeal.

Reversed and remanded.

STEVENSON and KLINGENSMITH, JJ., concur.

. At this point, Arrowood was known as Royal Surplus Lines Insurance Company.

. Arrowood and Conroy Simberg executed a “tolling agreement’’ that tolled the expiration of the statute of limitations for any claims that had arisen by December 22, 2008, until March 1, 2012. The federal case was dismissed without prejudice..

. The' order dismissing the Estoril litigation was not appealed, so the order became final thirty days after the trial court rendered the order of dismissal. See Silvestrone. 721 So.2d at 1175 n. 2.

. It appears that the parties entered the settlement agreement and filed the joint stipulation of dismissal on the same day. See id. at 49 (Perry, J., concurring in part and dissenting in part).

. Larson was a divided opinion. Two justices concurred fully with Justice Canady’s opinion. Id. at 48. Justice Perry concurred in part and dissented in part, and argued that both the underlying judgment and the sanctions award were barred by the statute of limitations. Id. at 48 (Perry, J., concurring in part and dissenting in part). Three justices dissented and argued the statute of limitations had not passed for either the underlying judgment or the sanctions award. Id. at 52-58 (Lewis, J., dissenting). Thus, the Court’s judgment with regard to the malpractice claim for the underlying judgment was concurred in by Justices Canady, Polston, Labar-ga, and Perry, and the judgment with regard to the sanctions claim was concurred in by then Chief Justice Quince and Justices Par-iente, Lewis, Canady, Polston, and Labarga. Id. at 48 n. 8.

.As the Florida Supreme Court discussed in Silvestrone:
For instance, a judgment becomes final either upon the expiration of the time for filing an appeal or postjudgment motions, or, if an appeal is taken, upon the appeal being affirmed and either the expiration of the time for filing motions for rehearing or a denial of the motions for rehearing.
Silvestrone. 721 So.2d at 1175 n. 2.