Taylor, J.
The appellants and plaintiffs below, R.S.B. Ventures, Inc. (“RSB”), Nasser “Isaac” Mizrahi, and Dr. Veronica Motir-am-Mizrahi, appeal the dismissal of their legal malpractice action against Robert P. Lithman and his associated law firms. The trial court dismissed the action on the ground that it was premature. We find that the trial court correctly ruled that the Mizrahis’ legal malpractice claim was premature, but erred in ruling that RSB’s legal malpractice claim was premature. Accordingly, we reverse the dismissal as to RSB only.
This legal malpractice action has its genesis in underlying litigation between appellants and the FDIC. For purposes of this opinion, we accept the allegations of the complaint as true.
In 2008, RSB received a loan of about $9.7 million from a bank. The co-owners of RSB, Mr. Mizrahi and Dr. Motiram-Mizr-ahi, personally guaranteed the loan. After a regulatory agency closed the bank, the Federal Deposit Insurance Corporation (“FDIC”) was approved as the receiver. The FDIC called the loan due.
In March 2010, the Mizrahis retained Jeffrey Berlowitz, Esq., and the law firm of Siegried, Rivera, Hyman, Lerner, De La Torre, Mars & Sobel, P.A., (collectively the “Berlowitz Defendants”) for representation in connection with litigation against the FDIC.
*262 In April 2010, RSB filed a complaint in Florida state court against the FDIC and several other defendants, seeking rescission of the loan and asserting claims for (among other things) fraud, conspiracy, breach of fiduciary duty, and unjust enrichment. The FDIC removed the case to federal court.
The FDIC filed a counterclaim against RSB and a crossclaim against the Mizrah-is, seeking to foreclose on the mortgage, recover on the promissory note, and recover from the Mizrahis as guarantors. RSB answered the counterclaim, and the Mizrahis answered the crossclaim. RSB later amended its complaint against the FDIC. The FDIC filed a motion to dismiss the amended complaint or, alternatively, for summary judgment. Beriowitz allegedly realized that he had erred in suing the FDIC in the first place, as it led to the FDIC filing the counterclaim ■ for foreclosure.
In December 2010, appellants contacted appellee Robert Lithman, Esq., and they began discussions about Lithman representing appellants in the FDIC litigation. Thereafter, appellants retained Robert Lithman, Esq., and his associated law firms, Robert P. Lithman, P.A.,' and Or-shan, Lithman, Seiden, Ramons, Hatton, Huesmann & Fajardo, LLP (collectively the “Lithman Defendants”).
In April 2011, the federal district court allowed Beriowitz and his law firm to withdraw from the underlying case. Subsequently, the Lithman Defendants failed to timely file a notice of appearance in the underlying litigation and failed to timely respond to FDIC’s motion to dismiss.
The FDIC transferred the loan to RADC/CADC Venture 2010-2, LLC (“RADC”), which was substituted as the counter-plaintiff and cross-plaintiff in the underlying litigation. However, the FDIC remained a defendant with respect to RSB’s amended complaint.
In July 2011, after repeatedly ordering appellants to obtain legal representation and to have counsel file a Notice of Appearance in the action, the federal district court: (1) dismissed RSB’s amended complaint; (2) struck RSB’s amended answer and affirmative defenses to the counterclaim; (3) entered a default against RSB; and (4) directed RADC to submit a motion for default final judgment as to RSB.
In October 2011, the federal district court entered a default final judgment of foreclosure against RSB. Lithman later entered a notice of appearance in the- case and filed a notice of appeal on behalf of appellants. However, in February 2012, the Eleventh Circuit dismissed the appeal for lack of prosecution. Lithman was allegedly negligent in failing to prosecute the appeal.
The federal district court awarded attorney’s fees to RADC. The attorney’s fees award was later reversed for the limited purpose of adding the award to the foreclosure judgment. See R.S.B. Ventures, Inc. v. F.D.I.C., 514 Fed.Appx. 853, 858-59 (11th Cir. 2013).
In September 2014, the Clerk of Court filed a Certificate of Sale reflecting that the foreclosed property was sold to RADC at a public sale for $4.8 million. Later that month, the underlying lawsuit was administratively closed.
No deficiency judgment was entered against any of the appellants, nor was any judgment entered against the Mizrahis individually in the crossclaim against them.
Meanwhile, in October 2013, appellants filed a two-count complaint for legal malpractice arising out of the underlying lawsuit. Count I was a legal malpractice claim against the Beriowitz Defendants. The trial court dismissed the claim against the *263 Berlowitz Defendants for improper venue, but granted appellants the option to re-file the claim in Miami-Dade County.[1]
Count II was a legal malpractice claim against the Lithman Defendants. Appellants sought damages for the following: (1) the default final judgment of foreclosure; (2) an attorney’s fees award in excess of $144,964; (3) the loss of any rights to the foreclosed property; (4) a potential deficiency judgment against appellants individually; and (5) additional attorney’s fees.
The Lithman Defendants moved to dismiss or, in the alternative, moved to abate or stay the case. They argued that the malpractice action was premature because the underlying suit was still pending.
The trial court granted the motion to dismiss. The court found that the administrative closing of the case did not affect “the substantive and/or procedural rights of the parties in interest,” noting that an administratively closed case can be easily reopened through a simple order without the necessity of paying a filing fee. The court also stated that the underlying suit remained pending as to the following matters: (1) appellants’ claims against certain other defendants; and (2) RADC’s claims against the Mizrahis. The court reasoned: “Consequently, until the Court receives confirmation that the Underlying Suit is concluded with an adverse outcome to all of the Plaintiffs, the instant action against the Lithman Defendants should be dismissed without prejudice because the Complaint is untimely and premature.” The court later entered a final order dismissing the action as “premature and not ripe for adjudication.”
The standard of review applicable to an order granting a motion to dismiss is de novo. Kohl v. Blue Cross & Blue Shield of Fla., Inc., 988 So.2d 654, 658 (Fla. 4th DCA 2008). A cause of action for legal malpractice has three elements: (1) the attorney’s employment; (2) the attorney’s neglect of a reasonable duty; and (3) the attorney’s negligence was the proximate cause of loss to the client. Kates v. Robinson, 786 So.2d 61, 64 (Fla. 4th DCA 2001). A cause of action for legal malpractice in the litigation context does not accrue until “the litigation is concluded by final judgment” and “the final judgment becomes final,” meaning that the time for filing an appeal or postjudgment motions has expired or, if an appeal was taken, the underlying legal proceeding has been completed on appellate review. Silvestrone v. Edell, 721 So.2d 1173, 1175 & n.2 (Fla. 1998).
“Since redressable harm is not established until final judgment is rendered, a malpractice claim is hypothetical and damages are speculative until the underlying action is concluded with an adverse outcome to the client.” Id. at 1175 (citations omitted). This is a bright-line rule designed to provide certainty and reduce litigation over when the statute of limitations starts to run. Id. at 1176.
The rule of Silvestrone, however, “merely establishes a bright line for establishing when the client has suffered some loss as a consequence of the attorney’s negligence.” Larson & Larson, P.A. v. TSE Indus., Inc., 22 So.3d 36, 42 (Fla. 2009). “It does not require that there be a determination of the full extent of all losses suffered by the client due to the lawyer’s negligence.” Id. Even if collateral matters are not yet resolved, “once a judgment adverse to the client has reached the *264 point of finality, there is no justification for tolling the statute of limitations.” Id. at 45. Although sanctions such as attorney’s fees are collateral to the underlying judgment, “being ‘collateral’ does not mean they are subsumed by the underlying judgment.” Id. at 47.
In Larson, for example, the Florida Supreme Court held that a legal malpractice claim accrues on an underlying judgment when that judgment becomes final, but does not accrue with respect to a subsequent sanctions judgment until the sanctions judgment becomes final. Id. at 43-48. With respect to the underlying final judgment, the Court explained: “Under the Silvestrone bright-line rule, redressable harm was established when the final judgment against TSE in the [underlying] action became final in September 2002.” Id. at 43. However, with respect to the sanctions claim that was ultimately settled, the Court explained that the point of finality was reached when the settlement was entered:
Here, the point of finality with respect to the sanctions claim was not reached until the settlement was entered while the sanctions litigation was pending. Until then, it was possible that an appeal in the sanctions litigation would produce an outcome favorable to TSE. Only with the entry of the settlement agreement was the existence of any harm to TSE arising from the sanctions claim determined with sufficient certainty to justify commencement of the limitations period.
Id. at 47-48 (Per Canady, J., with two Justices concurring in the opinion, and three Justices concurring in the result). Thus, the Court applied a bifurcated approach for legal malpractice claims arising out of litigation that results in two separate final judgments. Id. at 48.
Here, under the bright-line rule of Sil-vestrone, RSB’s legal malpractice claim accrued with respect to the default final judgment of foreclosure when the Eleventh Circuit dismissed RSB’s appeal of the judgment, rendering the judgment final. However, the Mizrahis’ legal malpractice claim has not yet accrued, as no adverse final judgment has been entered against them individually.
In the underlying litigation, a default final judgment was entered against RSB on RACD’s counterclaim for foreclosure. When the Eleventh Circuit dismissed RSB’s appeal and the foreclosure judgment became final, RSB suffered at least “some loss” as a result of the Lithman Defendants’ alleged malpractice. Regardless of whether RSB later becomes liable for a deficiency judgment, the foreclosure judgment resulted in RSB’s loss of any rights to the foreclosed property. The foreclosure judgment also included an award against RSB for attorney’s fees. Thus, even though collateral issues have not been resolved in the underlying litigation, a foreclosure judgment adverse to RSB has reached the point of finality, so RSB’s legal malpractice claim has accrued with respect to the foreclosure judgment. The trial court erred in finding that RSB’s legal malpractice action was premature.
By contrast, no adverse final judgment has been entered against the Mizrahis individually. It appears that RSB owned the foreclosed property, not the Mizrahis. Moreover, the foreclosure judgment was entered against RSB, but was not entered against the Mizrahis in their individual capacities. Thus, the foreclosure judgment did not constitute an adverse final judgment against the Mizrahis. While RADC’s crossclaim against the Mizrahis as guarantors remains pending and the Mizrahis might later become liable for a deficiency judgment, no deficiency judgment has been entered against them at this time. Because no adverse judgment has been *265 entered against the Mizrahis, their legal malpractice claims are premature.
Based on the foregoing, we affirm the dismissal of the Mizrahis’ legal malpractice claim,[2] but reverse the dismissal of RSB’s legal malpractice claim as it pertains to the foreclosure judgment. We remand for further proceedings consistent with this opinion.[3]

Affirmed in part, Reversed in part, and Remanded,

Gerber and Klingensmith, JJ., concur.

. On appeal, this court affirmed the order, holding that a forum selection clause was mandatory and that its enforcement was not unreasonable. See R.S.B. Ventures, Inc., v. Berlowitz, 201 So.3d 719 (Fla. 4th DCA 2016).

. The Mizrahis argue that, even if their malpractice claim was premature, the trial court should have abated the litigation rather than dismissing the complaint. However, because the Mizrahis never asked the trial court to abate the action, we decline to consider this request for the first time on appeal. See Wright v. Life Ins. Co. of Ga., 762 So.2d 992, 993 (Fla. 4th DCA 2000) C'[W]e note that the outcome here may have been different had Wright asked the trial court for an abatement .... In this case, however, the record does not indicate whether Wright asked the trial court for an abatement. We, therefore, are not inclined to grant a remedy that Wright did not ask for at the trial level”).

. For example, in light of our disposition, it would make sense for RSB to file an amended complaint solely on its own behalf.