# Supreme Court of Florida

_____

No. SC15-740
_____

**DONALD KIPNIS, et al.,**
Appellants,

vs.

**BAYERISCHE HYPO-UND VEREINSBANK, AG, etc., et al.,**
Appellees.

[November 3, 2016]

PERRY, J.

The United States Court of Appeals for the Eleventh Circuit certified the following question of Florida law that is determinative of a cause pending in that court and for which there appears to be no controlling precedent.

> UNDER FLORIDA LAW AND THE FACTS IN THIS CASE, DO THE CLAIMS OF THE PLAINTIFF TAXPAYERS RELATING TO THE CARDS TAX SHELTER ACCRUE AT THE TIME THE IRS ISSUES A NOTICE OF DEFICIENCY OR WHEN THE TAXPAYERS' UNDERLYING DISPUTE WITH THE IRS IS CONCLUDED OR FINAL?

Kipnis v. Bayerische Hypo-Und Vereinsbank, AG, 784 F.3d 771, 783 (11th Cir.

2015). We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. For the following

reasons, we answer the certified question by holding that the plaintiff taxpayers' claims accrued at the time their action in the tax court became final. That action became final ninety days after the tax court's judgment, at the expiration of the time period for an appeal of that judgment.

## FACTS

Donald Kipnis and Lawrence Kibler (Kipnis and Kibler) owned Miller & Soloman General Contractors, Inc., one of South Florida's largest general contractors. In search of increased bonding capacity and unable to obtain financing through conventional methods, Kipnis and Kibler's accountant learned about custom adjustable rate debt structure (CARDS) transactions. See Kipnis, 784 F.3d at 774. According to the promoters, a CARDS transaction could increase Kipnis and Kibler's bonding capacity and provide tax savings. Although neither Kipnis, Kibler, nor their accountant fully understood the nature of CARDS transactions, the law firm and banks facilitating the transaction insisted that such transactions were legitimate, economically substantive transactions that were valid for tax purposes.

Relying on the reputations of the banks Bayerische Hypo-Und Vereinsbank, AG, and HVB U.S. Finance, Inc. (appellees), and the law firm facilitating the transactions, Kipnis and Kibler initiated a CARDS transaction, which began on December 5, 2000. See id. at 774-76. In connection with the transaction, Kipnis

and Kibler paid promotional fees to the various entities involved in facilitating the transaction, including the appellees. On November 13, 2001, appellees notified Kipnis and Kibler that the CARDS transaction would end in under a month, twenty-nine years earlier than appellees' earlier representations at the beginning of the transaction.

Several months after the conclusion of Kipnis and Kibler's CARDS transaction, the Internal Revenue Service (IRS) determined that CARDS transactions lacked economic substance. See IRS Notice 2002-21, 2002-1 C.B. 730 (Mar. 18, 2002); see also Gustashaw v. Comm'r, 696 F.3d 1124, 1135 (11th Cir. 2012) ("There is no question that the CARDS transaction lacked economic substance."). On February 13, 2006, appellees entered into a deferred prosecution agreement with the United States Department of Justice, in which they admitted to assisting United States citizens with tax evasion by using CARDS transactions. Appellees specifically admitted that "CARDS transactions . . . involved false representations" and "had no purpose other than generating tax benefits for the clients involved."

On October 4, 2007, the IRS issued notices of deficiency, which disallowed the deductions based on the CARDS transaction on Kipnis and Kibler's 2000 and 2001 federal tax returns on the ground that the CARDS transaction lacked economic substance. Kipnis and Kibler challenged the deficiency determinations

in tax court. The tax court rejected the IRS's motion for summary judgment, holding that "it appears that that there is a material fact in dispute" on the issue of whether Kipnis and Kibler "had a nontax business purpose in entering into the CARDS transaction." Kipnis v. Comm'r, Docket Nos. 30370-07, 30373-07, at 1-2 (T.C. Sept. 13, 2011). Following a three-day trial, the tax court upheld the notice of deficiency on November 1, 2012, ruling that Kipnis and Kibler's "CARDS transaction lacked economic substance. It could not be profitable, and [Kipnis and Kibler] did not have a business purpose for entering into the transaction." Kibler v. Comm'r, 104 T.C.M. (CCH) 530, 2012 WL 5371787, at *13.

On November 4, 2013, Kipnis and Kibler filed a diversity action against appellees in the United States District Court for the Southern District of Florida, alleging a host of state law claims: violation of the state Civil Remedies for Criminal Practices Act; fraud; aiding and abetting fraud; conspiracy to commit fraud; breach of fiduciary duty; aiding and abetting breach of fiduciary duty; and negligent supervision of employees and executives. The federal district court dismissed the complaint, ruling that Florida's five-year statute of limitations on a Civil Remedies for Criminal Practices Act claim and the four-year statute of limitations on all other claims had run. See § 772.17, Fla. Stat. (2013) (Civil Remedies for Criminal Practices Act); § 95.11(3)(a), Fla. Stat. (2013) (negligence); § 95.11(3)(j), Fla. Stat. (fraud); § 95.11(3)(p), Fla. Stat. (2013) ("[a]ny action not

- 4 -

specifically provided for in these statutes"). Kipnis and Kibler appealed, and the United States Court of Appeals for the Eleventh Circuit certified the question of state law to this Court.

## ANALYSIS

The question before us, as certified by the Eleventh Circuit is:

> UNDER FLORIDA LAW AND THE FACTS IN THIS CASE, DO THE CLAIMS OF THE PLAINTIFF TAXPAYERS RELATING TO THE CARDS TAX SHELTER ACCRUE AT THE TIME THE IRS ISSUES A NOTICE OF DEFICIENCY OR WHEN THE TAXPAYERS' UNDERLYING DISPUTE WITH THE IRS IS CONCLUDED OR FINAL?

Kipnis, 784 F.3d at 784.

Kipnis and Kibler argue that had they won their tax court case, the cause of action alleged in their complaint would not have accrued. Appellees dispute that argument and assert that a claim for fees could have proceeded earlier without impact from Kipnis and Kibler's tax court litigation. This particular issue, the effect of the tax court litigation on Kipnis and Kibler's claim, is not before us and we decline to decide it. But for the purpose of answering the certified question, we assume that Kipnis and Kibler are correct and hold that their claim accrued when their underlying dispute with the IRS became final.

Generally, "the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues." § 95.031, Fla. Stat. (2013). "A cause of action accrues when the last element constituting the cause of

- 5 -

action occurs." § 95.031(1), Fla. Stat.; see also State Farm Mut. Auto. Ins. Co. v.

Lee, 678 So. 2d 818, 821 (Fla. 1996) ("[A] cause of action cannot be said to have

accrued, within the meaning of the statute of limitations, until an action may be

brought."). Damages are often the last element of a cause of action to accrue.

Two interrelated rules are at issue in this case: the "first injury" rule and the

"finality accrual" rule.

> The general rule, of course, is that where an injury, although slight, is
> sustained in consequence of the wrongful act of another, and the law
> affords a remedy therefor, the statute of limitations attaches at once.
> It is not material that all the damages resulting from the act shall have
> been sustained at that time and the running of the statute is not
> postponed by the fact that the actual or substantial damages do not
> occur until a later date.

City of Miami v. Brooks, 70 So. 2d 306, 308 (Fla. 1954). Lower courts have

labeled this the "first injury" rule. See Philip Morris USA, Inc. v. Barbanell, 100

So. 3d 152, 158 (Fla. 4th DCA 2012); R.J. Reynolds Tobacco Co. v. Webb, 93 So.

3d 331, 333-34 (Fla. 1st DCA 2012). However, a special rule applies when the

plaintiff's damages exist by virtue of an enforceable court judgment. In these

circumstances, the statute of limitations begins to run when the underlying

judgment becomes final. See Peat, Marwick, Mitchell & Co. v. Lane, 565 So. 2d

1323, 1326 (Fla. 1990). We now label this the "finality accrual rule."

To determine whether to apply the rule in any particular case, we have

considered a series of factors and applied the finality accrual rule where those

- 6 -

factors favored the rule's application. Our analysis has focused on whether application of the finality accrual rule would (1) avoid the needless disruption of an ongoing, preexisting relationship between the plaintiff and the defendant that could occur if we required an earlier lawsuit; (2) shield a potential plaintiff from having to argue inconsistent positions in separate actions; (3) ensure that a plaintiff's damages are sufficiently real and concrete prior to a judgment in the underlying litigation; (4) encourage the efficient use of scarce judicial resources; and (5) promote the policies underlying statutes of limitations in the case at bar.

First, we have refused to adopt a "rule that would mandate simultaneous suits [if doing so] would . . . prematurely disrupt an otherwise harmonious business relationship," especially where the plaintiff "has an established relationship" with the defendant. Blumberg v. USAA Cas. Ins. Co., 790 So. 2d 1061, 1065 (Fla. 2001); see also Larson & Larson, P.A. v. TSE Indus., Inc., 22 So. 3d 36, 45 (Fla. 2009) (discussing the need to avoid "undue disruption" of "an ongoing attorney-client relationship").

Appellees point out that there was no ongoing relationship to disrupt because Kipnis and Kibler's last transaction with appellees was in 2001. Kipnis and Kibler do not contest this point. Because that concern is not present in this case, it does not counsel in favor of applying the finality accrual rule. Accordingly, we focus our analysis on the remaining considerations.

Second, we have applied the finality accrual rule where doing so would shield a potential plaintiff from "the wholly untenable position of having to take directly contrary positions in these two actions." Larson & Larson, 22 So. 3d at 44 (quoting Peat, Marwick, 565 So. 2d at 1326); see also Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido, 790 So. 2d 1051, 1054 (Fla. 2001). Requiring a plaintiff to argue inconsistent positions in different courts would "hinder the defense of the underlying claim." Blumberg, 790 So. 2d at 1065. However, we distinguished cases in which the plaintiff "understood and believed" that he or she had suffered an injury prior to the conclusion of related litigation. See Peat, Marwick, 565 So. 2d at 1327.

Here, this factor weighs in favor of Kipnis and Kibler. They should not have had to argue before the tax court that their CARDS transaction had a legitimate economic purpose, while arguing before the federal district court that the tax court was likely to find that the CARDS transaction was a sham. This is not a case in which Kipnis and Kibler understood and believed that they had suffered injury before the tax court judgment. To the contrary, they repeatedly argued in the tax court that their CARDS transaction was economically substantive, and the tax court found that a genuine dispute of material fact existed on the question. To the extent that appellees argue that the invalidity of CARDS transactions is not central to Kipnis and Kibler's claims, we determine that the effect of the tax court

litigation on those claims is not before us, and for the purpose of this decision, we assume without deciding that none of those claims would have been valid absent the tax court judgment. Accordingly, this factor weighs in favor of holding that the finality accrual rule should apply to Kipnis and Kibler's claims.

Third, we have expressed concern about "claim[s] [that are] hypothetical and damages [that] are speculative." Larson & Larson, 22 So. 3d at 42 (quoting Silvestrone v. Edell, 721 So. 2d 1173, 1175 (Fla. 1998)). A settlement or final judgment creates certainty as to whether the plaintiff has or has not been injured. See id. at 46. This certainty does not exist "prior to the conclusion of the [underlying] litigation, [when] there [is] the potential of a lower settlement or judgment." Fremont Indem. Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A., 796 So. 2d 504, 506 (Fla. 2001); Blumberg, 790 So. 2d at 1065 (noting that "the insurer's denial of coverage in this case merely represented the insurer's position on the matter and did not resolve whether damages were incurred").

In this case, Kipnis and Kibler's complaint asserts three types of damages: (1) excessive fees paid to participate in CARDS; (2) back taxes and interest assessed by the IRS and by state tax agencies; and (3) legal and accounting fees and expenses paid in defending the CARDS transaction. None of the three types of injuries were sufficiently real or concrete; instead, they were merely hypothetical or speculative until the tax court's decision. Accordingly, this factor weighs in

- 9 -

favor of holding that the finality accrual rule should apply to Kipnis and Kibler's claims.

Appellees argue that Kipnis and Kibler suffered damages from the early termination of the CARDS transaction and that these damages were sufficiently real and concrete many years before the tax court's judgment. Appellees' argument misses the mark because the complaint does not assert that Kipnis and Kibler suffered damages as a result of the early termination of their CARDS transaction. This is likely because, as the tax court found, "at no time did [Kipnis and Kibler] have to forgo construction of a project because [they] could not get bonding." Kipnis, 2012 WL 5371787, at \*3. We see no reason to hold that Kipnis and Kibler were damaged by the early termination of the CARDS transaction when the complaint itself makes no such allegation.

Appellees also allege that their entry into the deferred prosecution agreement is itself an injury to Kipnis and Kibler but do not elaborate on how or why. Because entry into the deferred prosecution agreement is not one of the injuries that Kipnis and Kibler allege in their complaint, that entry also does not constitute an injury to Kipnis and Kibler.

The first injury that Kipnis and Kibler allege is the payment of the CARDS fees. They paid those fees in 2001, but payment of the CARDS fees did not become an injury until the tax court's decision in 2012. An "injury" is "[t]he

violation of another's legal right, for which the law provides a remedy; a wrong or injustice." Black's Law Dictionary 905-06 (10th ed. 2014). Had the tax court found in favor of Kipnis and Kibler, then they would have simply received what they paid for: increased bonding capacity with accompanying tax benefits. In that event, Kipnis and Kibler would have suffered no injury. The payment of CARDS fees did not become a "violation of [Kipnis and Kibler's] legal right,"—did not become "a wrong or injustice"—until the tax court's decision held that they could not enjoy both the tax benefits and the increased bonding capacity that they believed would have resulted from the transaction.

With regard to the second injury alleged, the payment of back taxes and interest, we hold that these damages did not become real and concrete, but instead were hypothetical and speculative, until the dispute with the IRS became final. In a similar case involving taxpayers who sued their accountants for improper tax assistance, we held that until the tax court determination, both the taxpayers and their accountants believed that the accounting advice was correct and that, therefore, the taxpayers' tax position was justified. Consequently, we held that there was no injury, in part because the taxpayers "had the option to pay the tax owed or to prove that they did not owe the tax by petitioning for a redetermination of the deficiency in the tax court." Peat, Marwick, 565 So. 2d at 1326.

- 11 -

As in Peat, Marwick, Kipnis and Kibler did not know for certain whether they would suffer any adverse tax consequences until their dispute with the IRS became final following the tax court's decision.  In fact, they had some reason to believe that they would prevail: notwithstanding appellees' deferred prosecution agreement and other cases determining that CARDS lacked economic substance, the tax court found that a genuine issue of material fact existed on the question of whether Kipnis and Kibler's CARDS transaction was economically substantive.  Accordingly, their injury concerning the payment of taxes and interest was speculative and uncertain, rather than definite and concrete.

We are also wary of the potential problems that could result if we were to hold that Kipnis and Kibler's injuries arose prior to the tax court's decision.  Illustrating our concern is a decision of the United States District Court for the Southern District of Florida, holding that a taxpayer who was in settlement negotiations with the IRS concerning the taxpayer's use of a fraudulent tax shelter lacked standing to sue the shelter's promotors.  Loftin v. KMPG LLP, No. 02-81166-CIV, 2003 WL 22225621, at *7 (S.D. Fla. 2003).  The federal district court explained that "[u]ntil and unless [the taxpayer] and the IRS reach a final resolution of the dispute, it is impossible to determine whether [the taxpayer] actually suffered damages from [the promotors'] alleged misconduct," because "the amount and nature of the [taxpayer's back taxes, interest, and penalties]

- 12 -

payment[s] remain unknown," making the injury insufficiently real and concrete to support standing under article III of the United States Constitution. Id. If Loftin makes a plaintiff ineligible to sue until the tax court enters its judgment and we were to hold that the statute of limitations could begin to run before the tax court's judgment, then the statute of limitations might conceivably prohibit a plaintiff's claims before the plaintiff obtained standing to bring those claims. We cannot countenance a rule that would time-bar a plaintiff's lawsuit before the plaintiff becomes eligible to sue.

Because the payment of the CARDS fees did not become a real injury until the tax court's judgment, because the prospect of paying back taxes and interest was too speculative to ripen into damages until the tax court's judgment, and because appellees do not argue that the legal and accounting fees and expenses that Kipnis and Kibler paid in defending the CARDS transaction arose prior to the tax court's judgment, the injuries that Kipnis and Kibler allege they suffered all ripened into real and concrete damages only when the tax court's judgment became final. Accordingly, this factor weighs in favor of holding that the finality accrual rule should apply to Kipnis and Kibler's claims.

Fourth, we have endeavored to promote the efficient use of judicial resources by creating a "bright-line rule [to] provide certainty and reduce litigation over when the statute starts to run." Silvestrone, 721 So. 2d at 1176; see also

Larson & Larson, 22 So. 3d at 40, Perez-Abreu, 790 So. 2d at 1054. We have also noted that the finality accrual rule is preferable where, by allowing for a plaintiff to delay filing a lawsuit, a defendant would receive additional time to correct any problems or errors that might cause the plaintiff problems in the underlying litigation, perhaps obviating the need for any secondary litigation. See Peat, Markwick, 565 So. 2d at 1327.

Kipnis and Kibler argue that the finality accrual rule allows for the most efficient use of judicial resources and believes that the appellees' proposed limitation is unworkable. Appellees argues that limiting the finality accrual rule to malpractice cases or cases that are sufficiently analogous to malpractice allows for the most efficient use of judicial resources. Appellees also asserts that Kipnis and Kibler's proposed expansion of the finality accrual rule is unworkable.

We agree with Kipnis and Kibler that in this case, the finality accrual rule allows for the more efficient use of judicial resources. If we held that the statute of limitations began to run at an earlier date, we would force plaintiffs like Kipnis and Kibler to bring their secondary lawsuits earlier in order to comply with the statute of limitations, even though a secondary lawsuit would be unnecessary if the plaintiffs won their underlying litigation. Allowing plaintiffs to delay filing their secondary lawsuits provides potential defendants with more time to correct or mitigate any problems they may have caused, decreasing the likelihood that

- 14 -

secondary litigation would be necessary. By contrast, requiring plaintiffs to file lawsuits earlier will force plaintiffs, defendants, and courts alike to grapple with early litigation issues—i.e., motions to dismiss, discovery issues, and scheduling appearances and hearings—in lawsuits that may prove to be entirely unnecessary. Some courts would likely respond by holding these cases in abeyance, unnecessarily crowding the docket with cases on hold. Applying the finality accrual rule will enable plaintiffs to litigate their primary lawsuits to completion and entirely avoid the unnecessary filing of secondary lawsuits in the event that the primary lawsuits end favorably.

We also agree with Kipnis and Kibler that appellees' proposal to limit the finality accrual rule to malpractice and malpractice-like cases is not likely to serve the administration of justice. We have previously applied the finality accrual rule in cases not involving malpractice. See Fremont Indem., 796 So. 2d at 505 (claims for breach of contract and breach of fiduciary duty against an attorney); Blumberg, 790 So. 2d at 1065 (negligence claims against an insurance agent).

Finally, we consider whether application of the finality accrual rule serves the policies motivating the Legislature to enact statutes of limitations. "Clearly, the purpose of the statute of limitations includes 'protect[ing] defendants from unfair surprise and stale claims.' " Raymond James Fin. Servs., Inc. v. Phillips, 126 So. 3d 186, 192 (Fla. 2013) (quoting Fla. Dep't of Health & Rehab. Servs. v.

- 15 -

S.A.P., 835 So. 2d 1091, 1096 (Fla. 2002)).  We have explained that statutes of limitations

> afford parties needed protection against the necessity of defending claims which, because of their antiquity, would place the defendant at a grave disadvantage.  In such cases how resolutely unfair it would be to award one who has willfully or carelessly slept on his legal rights an opportunity to enforce an unfresh claim against a party who is left to shield himself from liability with nothing more than tattered or faded memories, misplaced or discarded records, and missing or deceased witnesses.  Indeed, in such circumstances, the quest for truth might elude even the wisest court.

Major League Baseball v. Morsani, 790 So. 2d 1071, 1075 (Fla. 2001) (quoting Nardone v. Reynolds, 333 So. 2d 25, 36 (Fla. 1976)).

Here, these considerations do not counsel in favor of limiting the finality accrual rule.  Appellees were not likely to have been "unfairly surprised" by this action, and the concerns about evidence succumbing to the sands of time are weaker here.  They were aware that Kipnis and Kibler were engaged in a tax court action defending their CARDS transaction because appellees had employees who were deposed in that litigation.  Additionally, appellees were litigating CARDS lawsuits as late as March and May of last year—nearly a year and a half after Kipnis and Kibler filed their action.  See Rezner v. HVB America, Inc., No. 06-cv-02064-VC, at 1 (N.D. Cal. May 6, 2015), ECF No. 643 (noting a settlement agreement had been reached); Kerman v. Chenery Assocs., No. 3:06-CV-00338-CRS, 2015 WL 1292581, at *1 (W.D. Ky. Mar. 23, 2015) (dismissing plaintiffs'

remaining claims against HVB). Both of these actions and Kipnis and Kibler's tax court litigation would have preserved testimony, brought important documents to light, and otherwise mitigated the concern that evidence would be lost over time.

Finally, we must weigh all of the above competing concerns. The need to shield plaintiffs from taking directly contrary positions in separate actions weighs heavily in favor of applying the finality accrual rule, as does our concern about ensuring that claims accrue only when damages are real and concrete, not hypothetical and speculative. The finality accrual rule also promotes the efficient use of judicial resources, weighing in favor of applying the rule. Finally, because the facts of this case are not inconsistent with the policy behind statutes of limitations, policy considerations do not weigh against applying the finality accrual rule.

## CONCLUSION

In light of the above competing concerns, we hold that the finality accrual rule applies in this case. Accordingly, we answer the certified question posed by the United States Court of Appeals for the Eleventh Circuit by holding that Kipnis and Kibler's claims accrued at the time their action in the tax court became final, following expiration of the ninety-day time period for appealing the tax court's judgment. See I.R.C. § 7483 (2012); Tax Ct. R. 190(a); see also Silvestrone, 721 So. 2d 1175 & n.2 (noting that for the purpose of the finality accrual rule, a

judgment from which no appeal is taken becomes final after the expiration of the appeal period). Having answered the certified question, we return this case to the United States Court of Appeals for the Eleventh Circuit.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
CANADY and POLSTON, JJ., concur in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit – Case No. 14-11959

Michael G. Dickler and Scott F. Hessell of Sperling & Slater, P.C., Chicago, Illinois; and Dennis G. Kainen of Weisberg Kainen Mark, PL, Miami, Florida,

for Appellants

Ann Marie St. Peter-Griffith of Kasowitz, Benson, Torres & Friedman LLP, Miami, Florida; Michael A. Hanin of Kasowitz, Benson, Torres & Friedman LLP, New York, New York; and Henry Brownstein of Kasowitz, Benson, Torres & Friedman LLP, Washington, District of Columbia,

for Appellees